UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANCISCO SANTOS,

    Plaintiff,

v.

J. KEENAN, C.O., *et al.*,

    Defendants.

17-CV-984
DECISION AND ORDER

The *pro se* plaintiff, Francisco Santos, is an inmate confined at the Elmira Correctional Facility.[1] He brings this action under 42 U.S.C. § 1983, alleging numerous civil rights violations and seeking injunctive relief, declaratory relief, and money damages. Docket Item 1. Santos also has moved for leave to proceed in forma pauperis, Docket Item 2, and for the appointment of counsel, Docket Item 3.

Because Santos meets the statutory requirements to proceed in forma pauperis and has submitted the required authorization, that request is granted. For that reason, the Court screens the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and concludes that some of Santos's claims survive screening but others must be dismissed.

---

[1] Santos was confined at the Attica Correctional Facility when he filed his complaint in October 2017. Docket Item 1. Since that time, he has been transferred to Elmira. *See* Docket Item 7.

**DISCUSSION**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**I.     STANDARD OF REVIEW**

In evaluating the complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently

pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## II.  PLAINTIFF'S ALLEGATIONS

Santos asserts three claims. First, Santos claims retaliation—including verbal harassment; the denial of recreation, telephone privileges, and family visits; false misbehavior reports filed against him; inspection of his mail; a search of his cell; and his removal from prison programs and cell assignments—for exercising his First Amendment right to file grievances against various defendants. Docket Item 1 at 6-10. Second, Santos raises an Eighth Amendment claim for deliberate indifference to his medical needs. *Id.* at 11. Finally, he claims that various defendants denied him his right to due process in connection with two different proceedings that occurred during his incarceration at Attica. *Id.* at 11-14.

3

A liberal reading of the complaint tells the following story.

### A. Allegations Relating to Retaliation and Due Process Claims

On May 13-15, 2016, Santos participated in the "Family Reunion Program" ("Family Program") at Attica.[2] Docket Item 1 at 44. On May 23, 2016, he received a "disbursement receipt" notifying him that he had been charged six dollars for cleaning the oven and floor in unit four, the unit he used while participating in the Family Program. *Id.* Santos contested the charge. He claimed that on May 15, an officer searched and checked the unit for any missing items, damage, or uncleanliness; after the officer found nothing at issue, Santos "signed both papers and he stated that nothing was missing or broken." *Id.* "At no point or time during the unit search nor on our way back to the facility [did the officer complain or say] anything negative of the [cleanliness] of the unit." *Id.* Santos filed a complaint with defendant Mrs. D. Bourgeois, a Family Program coordinator, requesting an investigation into the matter. *Id.*; *see also* Docket Item 1 at 6.

On June 6, 2016, Bourgeois responded to Santos's complaint. Docket Item 1 at 45. She told Santos that the officer who checked him out on Sunday May 15 "was not the [Family Program] officer and may not have noticed the issues in the unit at the time." *Id.* "However, when the [Family Program] Officer opened the unit on Monday morning

---

[2] "The Family Reunion Program . . . is designed to provide approved inmates and their families the opportunity to meet for an extended period of time in privacy. The goal of the program is to preserve, enhance, and strengthen family ties that have been disrupted as a result of incarceration." New York State Department of Corrections and Community Supervision Directive No. 4500, http://www.doccs.ny.gov/Directives/4500.pdf.

4

. . . he noticed the issues with the cleanliness." *Id.* Bourgeois told Santos to address his concerns to the Family Program officer, "as it is well within his area of operation." *Id.*

Santos alleges that after he complained, various defendants retaliated against him and that the retaliation sometimes "snowballed."

### Denial of Outside Recreation

On June 19, 2016, Defendant Keenan "verbally harassed [Santos] and directed [him] to NOT sign-up for recreation for the next day because [Sanots] like[s] to complain[]." Docket Item 1, at 6. On July 20, 2016, Keenan denied "outside recreation . . . as promised the day before." *Id.*; *see also* Docket Item 1 at 24.

### Telephone Access

On July 3, 2016, Keenan denied Santos the use of a telephone in retaliation for the grievance that Santos filed against Keenan for denying him outside recreation. Docket Item 1 at 7, 29. At the time, Keenan "r[an] the telephones in the E-block recreation yard [at Attica] on a rotating basis." *Id.* at 34. It was his practice to "place[] the inmates' I.D. card[s] in a milk crate and pull[] them at random to determine who uses the phone next, and that the only time an I.D. is returned to the milk crate is when an inmate does not successfully complete a call." *Id.*

On Sunday, July 3, 2016, between 7:00 and 7:30 pm, Keenan and a second officer "started calling inmates for the phone." *Id.* at 29. Santos watched the second officer pick an I.D. card and start to call the corresponding inmate to use the phone. *Id.* Before that officer could call out the inmate's name, however, Keenan told him "something in a low voice." *Id.* The officers were within earshot of another inmate who told Santos that the second officer had picked Santos's I.D. but that Keenan told the officer to put Santos's I.D. back and leave it for last. *Id.* As a result, Santos was unable

5

to use the telephone until two days later. *Id.* Santos also was denied the use of a phone on March 31, 2017, by defendant John Doe #5. *Id.* at 8.

Santos filed grievance #A-66894-16 against Keenan because Keenan had denied Santos use of the telephone in retaliation for an earlier grievance Santos had filed against Keenan. Docket Item 1 at 11, 29. While that grievance was being investigated, on July 15, 2016, defendant John Doe #1 Sgt., who is Keenan's supervisor, "lied, made false statements, and tampered with the evidence/process" to cover-up Keenan's actions. *Id.* at 11. In addition, defendant Sandra Prusak, an Inmate Records Coordinator, refused to properly preserve and make available to Santos video and audio footage that he had requested. *Id.* at 12. And defendant A. Romesser, an Inmate Grievance Program Supervisor, then refused to allow Santos's appeal request "for specific grievances to be properly transmitted," preventing Santos from obtaining a "fair and impartial grievance procedure/process." *Id.* at 12.

*Family Visits*

On July 7, 2016, Family Program Coordinator Bourgeois would not let Santos participate in the Family Program, and in August 2016, she "mislead [Santos] by informing [him] that [his] wife won't be able to participate nor be place[d] within an application until[] a decision is render[ed] on the grievance [that Santos] filed against" Bourgeois. Docket Item 1 at 7; *see also* Docket Item 1 at 38-39. On December 26, 2016, John Does #2 and #3 "refused to comply with a schedule[d] special visit which allowe[d] [six] family members to visit [Santos] at the same time." *Id.* On December 27, 2016, the same John Doe officers denied entry to three of Santos's family members who were attempting to visit him at the prison.

6

*Program and Cell Assignment*

Defendants Conners and John Does #4 and #7 conspired to remove Santos "from [his] assigned program and cell-location (Block E-54-28)" for retaliatory reasons. Docket Item 1 at 9.

*False Misbehavior Reports*

Defendants Keenan, Stanton, Barton, and John Doe #6 filed false disciplinary charges against Santos or conspired with "co-workers with . . . malice" to do so. Docket Item 1 at 7, 8. For example, on April 4, 2017,[3] prison officials provided Santos with a misbehavior report charging him with violating the following rules:

> 113.11: An inmate shall not possess any authorized item that has been altered in any manner so as to change its original intent and/or purpose.
>
> 116.10: An inmate shall not lose, destroy, steal, misuse, damage or waste any type of State property.
>
> 107.20: An inmate shall not lie or provide an incomplete, misleading and/or false statement or information.

8 N.Y.C.R.R. § 270.2; *see* Docket Item 1 at 88. A "tier 2 disciplinary hearing"[4] was held between April 7 and April 20, 2017. Defendant John Doe #7 administered the hearing and engaged in conduct that denied Santos his due process rights. Docket Item 1 at

---

[3] On one page of Santos's submissions he contends that he received the report on April 4, 2017, Docket Item 1 at 87; elsewhere, however, he contends that he received this report on April 3, Docket Item 1 at 86.

[4] New York State Department of Corrections and Community Supervision "conducts three types of disciplinary hearings for its inmates." *Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). "Tier I hearings address the least serious infractions and have as their maximum punishment loss of privileges such as recreation." *Id.* "Tier II hearings address more serious infractions and may result in 30 days of confinement in a Special Housing Unit ('SHU')." *Id.* "Tier III hearings concern the most serious violations and may result in unlimited SHU confinement (up to the length of the sentence) and recommended loss of 'good time' credits." *Id.*

12. Santos was held in "[p]re hearing confinement"[5] more seventeen days and "given a [p]enalty of an additional 30 days lost of privileges." *Id.* at 87.

*Cell Search and Mail Inspection*

Defendants Stanton and Barton read Santos's mail and conspired to harass him and illegally search his cell. Docket Item 1 at 8. Those defendants and defendant John Doe #6 also conspired to confine him and file false charges against him. *Id.*

### B. Allegations of Deliberate Indifference

On April 6, 2017, Santos obtained a "Flat permit." *Id.* at 104. The permit was "signed and approved by the medical health [u]nit and the [d]eputy superintendent for [s]ecurity." *Id.* This permit was obtained for "medical reasons": Santos had advised that it was uncomfortable and painful for him to reside on the second floor due to the stairs. *Id.* Nevertheless, according to Santos,

> from April 6 to 28 of 2017, [John Doe #8 and Kolacz] conspired into consciously prevent me from moving into the first floor (flats) of E-block, with malice intention and deliberate indifference to my medical needs/treatment.
>
> [John Doe #8 and Kolacz] were fully-aware of my medical needs in which requires that I reside within a first floor, yet, in retaliation, defendants kept stopping such movement and purposely kept in the second floor.

Docket Item 1 at 11.

---

[5] Given the fact that Santos was subject to a Tier II report and hearing, this Court construes his complaint to mean that he was subject to Special Housing Unit confinement. *See* note 4, *supra.*

8

## III. ANALYSIS

### A. Official Capacity Claims

As an initial matter, Santos's claims for money damages against the defendants in their official capacities must be dismissed. The Eleventh Amendment divests the Court of subject matter jurisdiction over any claims for money damages against a New York State official acting in his or her official capacity unless the state has consented to the suit or waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). In this case, because there has been no waiver of immunity or consent to suit, and because Congress has not abrogated immunity, Santos's claims seeking money damages against the defendants in their official capacities are dismissed under 28 U.S.C. § 1915A(b)(2).

### B. Retaliation, Conspiracy, and Harassment Claims

This Court reads Santos's first claim as a § 1983 First Amendment retaliation claim. *See* Docket Item 1 at 10 ("The constitutional basis for this Claim under 42 U.S.C. § 1983 is for FREE SPEECH in conspiracy and retaliation against prisoners for exercising the right of Free Speech in violation of the First Amendment"). Santos also peppers the words "conspiracy" and "harassment" throughout his complaint, however, and so this Court will analyze the claim as a harassment claim and a § 1985(3) conspiracy claim as well.

#### 1. Retaliation Claim

To state a First Amendment retaliation claim, "a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Santos's complaint states a viable retaliation claim for screening purposes.

"[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Santos alleges that he was disciplined for filing a complaint against prison staff. That is sufficient to meet the first prong—protected speech.

Santos also alleges that he was harassed, accused falsely, subjected to the search of his cell and inspection of his mail, removed "from [his] assigned program" and cell assignment, and denied recreation and some visitation—all "in retaliation" for the "written complaint[s]" and "grievances [he] filed against the prison staff." Docket Item 1 at 6-10. Because Santos has alleged both adverse action and a causal connection between the adverse action and the filing of his complaints and grievances, the complaint meets the second and third prongs as well. Therefore, these claims are sufficient for the purposes of screening and may proceed to service against the defendants.

### 2. Section 1985(3) Conspiracy Claim

Santos claims that defendants acted as a result of a conspiracy (read liberally, in violation of 42 U.S.C. § 1985(3)). To state a claim under § 1985(3), a plaintiff must allege

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal

10

> privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The conspiracy Santos alleges involves the defendants' depriving him of his First Amendment rights to pursue a grievance. Because a conspiracy to infringe First Amendment rights may violate § 1985(3) if the plaintiff can show state involvement,[6] *United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 830 (1983), Santos has sufficiently alleged three of the four elements of a § 1985(3) conspiracy claim: a conspiracy, acts in furtherance of the conspiracy, and an injury. But the complaint does not include any facts supporting the second element—"that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 835 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Santos does not allege that the defendants' conspiracy to suppress his right to file grievances was based on race-based animus or any other discriminatory classification.[7] Nevertheless, because Santos is proceeding *pro se*, he will be given an opportunity to amend his complaint. If Santos has reason to

---

[6] A conspiracy to infringe First Amendment rights in violation of § 1985(3) does not necessarily require state action but requires a plaintiff to prove "that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 830 (1983).

[7] Although 42 U.S.C. § 1985(3) certainly extends to conspiracies involving "animus to deprive [individuals] of the equal enjoyment of legal rights because of their race," *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971), and may extend as far as reaching "conspiracies aimed at any class or organization on account of its political views or activities," *Scott*, 463 U.S. at 837, § 1985(3) does not "reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities," *id.* (emphasis in original).

11

believe that the alleged conspiracy was "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action," *Mian*, 7 F.3d at 1088 (quoting *Scott*, 463 U.S. at 829), he may file an amended complaint including facts in support of that allegation. If, on or before March 11, 2019, Santos does not file an amended complaint adequately stating a § 1985(3) conspiracy, that claim will be dismissed.

### 3. Harassment

Harassment is not a cognizable claim under § 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986). Nor do the threats that Santos alleges implicate constitutional protections. *See Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995). Accordingly, to the extent it raises harassment, Santos's § 1983 claim is dismissed with prejudice.

### C. Deliberate Indifference to Medical Needs

Santos alleges that defendants Correction Officer John Doe #8 and Correction Officer D. Kolacz were deliberately indifferent to his medical needs based on their refusal to move him to the first floor despite a "medical permit" requiring him to reside on the first floor so that he could avoid stairs. The standard for proving deliberate indifference to an inmate's serious medical needs "includes both subjective and objective components." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "Second, the defendant 'must act with a sufficiently culpable state of mind.'" *Id.* (quoting *Hathaway*, 37 F.3d at 66). "An official acts with the requisite deliberate indifference when that official 'knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Dismissal pursuant to § 1915A is inappropriate when "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Santos's claim against John Doe #8 and Kolacz for a deliberate indifference to his medical needs meets that standard. *Cf. Williams v. Canty*, 2008 WL 821863, at *1-*2, *5 (M.D.Ga. Mar. 25, 2008) (inmate's claim survived summary judgment where his medical profile required low bunk, low tier, cell feed, and wheelchair access due to leg condition but prison officials "decided to move him upstairs"). He claims that his physical condition required him to avoid stairs and that the defendants ignored that knowingly and with malice. Docket Item 1 at 11. That is enough at least at the screening stage.

### D. Due Process Claims

#### 1. Telephone Grievance Concerns

Santos's due process claim related to his grievance, on the other hand, must be dismissed. Santos's numerous "claim[s] that defendants violated his due process rights" throughout the appeals of his telephone grievance "confuses a state-created procedural entitlement with a constitutional right." *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (quoting *Olim v.*

13

*Wakinekona*, 461 U.S. 238, 250 (1983)). Although an "inmate's rights to communicate with family and friends are essentially First Amendment rights subject to [§] 1983 protection," *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975), "prisoners do not have an absolute right to make phone calls." *Banks v. Argo*, 2012 WL 4471585, at *5 (S.D.N.Y. Sept. 25, 2012) (quoting *Fair v. Weiburg*, 2006 WL 2801999, at *7 (S.D.N.Y. Sept. 28, 2006)). As Santos's underlying complaint involves just one or two days when he was not able to use the telephone, his liberty or property interests at issue are insufficient to impose any procedural requirements upon investigations regarding their temporary suspension. His due process claim therefore fails and is dismissed.

### E. April 2017 Disciplinary Hearings

Santos alleges that defendant John Doe #7 violated his due process rights when he administered the April 2017 hearing on the charges that prison officials brought against Santos in their misbehavior report of April 4, 2017. Docket Item 1 at 12. "In raising a due process claim, a plaintiff must first establish that the challenged action infringed a constitutionally protected property or liberty interest." *Brooks v. Prack*, 77 F. Supp.3d 301, 314 (W.D.N.Y. 2014). "A prisoner's liberty interest is implicated by prison discipline, such as [Special Housing Unit ("SHU")] confinement, only if the discipline 'imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Liberally construed, Santos alleges that he was subject to seventeen days of SHU confinement as discipline for his conduct. Docket Item 1 at 13, 87.

The Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer*, 364 F.3d at 64. "And although shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest . . . SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id.* But "where the period of time spent in SHU was exceedingly short—less than . . . 30 days . . . and there was no indication that the plaintiff endured unusual SHU conditions" no due process right is implicated. *Id.* at 65-66. Santos alleges that he spent seventeen days in SHU confinement and has provided no indication that he endured unusual SHU conditions or that the SHU conditions at Attica were atypical. Nevertheless, because of his *pro se* status, Santos will be given an opportunity to amend his complaint. If he endured unusual SHU conditions, or if SHU conditions at Attica were themselves atypical, Santos may file an amended complaint including facts in support of those allegations. If Santos does not file an amended complaint on or before March 11, 2019, adequately alleging that he endured unusual or atypical conditions while in SHU, his disciplinary-hearing claim will be dismissed.

IV. **PLAINTIFF'S REQUEST TO APPOINT COUNSEL**

Santos has asked this Court to appoint him counsel. Docket Item 3. Under 28 U.S.C. § 1915, "[t]he court may request an attorney to represent any person unable to afford counsel." "Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision." *Hodge v. Police Officers*, 802 F.2d 58, 60

15

(2d Cir. 1986). In deciding whether to appoint counsel, courts should consider "the merits of the indigent's claim[,] . . . the nature of the factual issues the claim presents[, and] . . . the plaintiff's apparent ability to present the case." *Id.* at 60-61. The only facts this Court now has are those alleged in Santos's complaint. At least until after the defendants have had an opportunity to respond, the Court lacks sufficient information to consider the factors set forth in *Hodge*. Santos's request for appointment of counsel is therefore denied without prejudice as premature.

## CONCLUSION

Because Santos has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the required authorization, his request to proceed *in forma pauperis*, Docket Item 2, is granted. His motion to appoint counsel, Docket Item 3, is denied as premature. For the reasons stated above, (1) Santos's claims for money damages against the defendants in their official capacities are dismissed with prejudice; (2) his retaliation claims against the defendants and his deliberate indifference claim against defendants John Doe #8 and Kolacz may proceed; and (3) his remaining claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless he files an amended complaint **on or before March 11, 2019**, in which he includes the necessary allegations, as addressed above, in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Santos is advised that any amended complaint will completely replace his prior complaint in this action and "render[] it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (*quoting Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Therefore, an amended complaint must include ***all allegations against each***

16

***of the named defendants***, so that the amended complaint stands alone as the only complaint that the defendants must answer.

## ORDER

IT HEREBY IS ORDERED that the plaintiff's motion to proceed *in forma pauperis* is granted; and it is further

ORDERED that the plaintiff is granted leave to file an amended complaint as directed above **on or before Monday March 11, 2019**; and it is further

ORDERED that the plaintiff's motion for the appointment of counsel is denied without prejudice; and it is further

ORDERED that the plaintiff's claims for money damages against the defendants in their official capacities are dismissed with prejudice; and it is further

ORDERED that the plaintiff's § 1983 due process claim in relation to his telephone-access grievance and his harassment claim are dismissed with prejudice; and it is further

ORDERED that the Clerk of Court shall send to the plaintiff with this order a copy of the complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if the plaintiff does not file an amended complaint as directed above by **March 11, 2019**, his § 1985(3) claim and his SHU-related due process claim will be dismissed with prejudice without further order of the Court; and it is further

ORDERED that regardless of whether Santos amends his complaint, on or **after March 12, 2019**, the Clerk of the Court shall cause the United States Marshal to serve copies of the summons, complaint or amended complaint, and this order upon

defendants without the plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office Michael.Russo@ag.ny.gov; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g)(2), the defendants shall answer the complaint upon service.

SO ORDERED.

Dated: January 23, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE